UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                    :
OLGA BATYREVA,
                                                                    :
                                            Plaintiff,                  07 Civ. 4544 (PAC) (DF)
                                                                    :
                    -against-                                       **REPORT AND**
                                                                    :   **RECOMMENDATION**
NEW YORK CITY DEPARTMENT
OF EDUCATION,                                                       :

                                            Defendant.             :
------------------------------------------------------------------------X

**TO THE HONORABLE PAUL A. CROTTY, U.S.D.J.:**

In this action pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C.

§§ 2000e to 2000e-17, *pro se* plaintiff Olga Batyreva ("Plaintiff") claims that defendant the New

York City Department of Education ("DOE" or "Defendant") discriminated against her based on

her national origin (Russian) and retaliated against her for filing complaints about the

discrimination and about grading procedures at the school where she worked as a teacher.

Currently before the Court is Defendant's motion to dismiss the complaint pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure and Plaintiff's cross-motion to amend the

complaint.

For the reasons discussed herein, I recommend that Defendant's motion to dismiss the

complaint be granted in part and denied in part.  Specifically, I recommend that the motion be

granted as to any claims by Plaintiff that she was subjected to acts of discrimination or retaliation

prior to May 31, 2006, as such claims are barred by the doctrine of collateral estoppel.[1]    As for

any claims made by Plaintiff with respect to the period subsequent to May 31, 2006,

I recommend that Defendant's motion to dismiss be granted as to Plaintiff's claims that she was

retaliated against for complaining about grading procedures, as her complaints in this regard did

not constitute protected activity under Title VII, but that Defendant's motion otherwise be

denied.  Finally, with respect to the cross-motion, I recommend that Plaintiff be afforded the

opportunity to amend her complaint as a matter of course, pursuant to Rule 15(a)(1) of the

Federal Rules of Civil Procedure, as no responsive pleading has yet been served.

## BACKGROUND

### A.    Factual Background

The following facts are taken from the five-page form complaint and 33-page attachment

detailing Plaintiff's allegations.[2]  Plaintiff came to the United States from Russia in 1996.

(Complaint, dated May 30, 2007 ("Compl.") (Dkt. 1) at ¶ 3.)  Plaintiff was approximately 57

years old when she arrived (*see* Compl. at ¶ 96(29)), and held "a degree equivalent to [a] PhD in

Mathematics and Physics" from Russia.  (*Id.* at ¶ 3.)  Plaintiff began working for Defendant in

September 1999 as a math teacher.  (*Id.* at ¶¶ 1, 3.)  For her first four years, Plaintiff was

assigned to the "Wings Academy," located in the Bronx.  (*Id.* at ¶ 3.)  Then, in September 2003,

---

[1] May 31, 2006 is the date that Plaintiff filed a claim in New York Supreme Court pursuant to Article 78 of the New York Civil Procedure Law and Rules ("CPLR").  As discussed below, the state court's decision bars Plaintiff from re-litigating her claims of discrimination and retaliation for the period covered by the state court claim.

[2] As discussed *infra* (*see* Discussion, at Point I(A)(1)), on Defendant's motion, the Court must accept Plaintiff's factual allegations as true, interpret them liberally, and draw all reasonable inferences in her favor.

Plaintiff requested, and was granted, a "seniority transfer" to Murry Bergtraum High School ("MBHS"), located in Lower Manhattan. Plaintiff requested the transfer to MBHS in order to be closer to her residence. (*Id.* at ¶ 7.)

### 1.    School Year 2003-2004

Marion Tang ("Tang") was the Assistant Principal for Mathematics at MBHS. Plaintiff alleges that Tang was hostile towards her, beginning on the first day that Plaintiff arrived at MBHS. (Compl. at ¶ 7.) Plaintiff claims that Tang told her that she should not have transferred to MBHS without interviewing with Tang first, and threatened to give her unsatisfactory ratings if she refused to go back to her former school. (*Id.*) According to Plaintiff, there were five new math teachers at MBHS that fall, but only Plaintiff and Mr. Gilman, "another teacher from Russia," were "greeted" in this hostile manner by Tang. (*Id.* at ¶¶ 7-8.)

According to Plaintiff, her Russian accent was "frequently criticized" by her supervisors. (*Id.* at ¶ 8.) Plaintiff alleges that Tang humiliated her by writing on the blackboard in front of students: "Ms. Batyreva should speak slowly and clearly." (*Id.* at ¶ 9.) During the course of the year, Tang undermined Plaintiff's authority by classifying disciplinary problems in her classes as "classroom management issues" and refused to authorize Plaintiff to refer difficult students to the Dean's Office. (*Id.* at ¶¶ 9-11.)

During January 2004, Plaintiff participated in grading Regents Exams.[3] (*Id.* at ¶ 15.) Plaintiff observed that other teachers at MBHS were "deviat[ing] from [the] directions for grading" the exams by using erasable number-two pencils instead of red pencils or red pens.

---

[3] "The Regents Exam is a New York State standardized test, designed to test High School students' progress." *Altman v. N.Y. City Dep't of Educ.*, No. 06 Civ. 6319 (HB), 2007 U.S. Dist. LEXIS 91348, at *19 n.10 (S.D.N.Y. Dec. 12, 2007) (citation omitted).

(*Id.*)  According to Plaintiff, the teachers' use of number-two pencils to grade the exams "created the opportunity for cheating."  (*Id.* at ¶ 17.)  Plaintiff alleges that she wrote to the principal at MBHS, the "Office of Special Investigation," the Board of Regents in Albany, and eventually a Special Commissioner at the DOE.  (*Id.* at ¶¶ 15-18.)  Plaintiff further alleges that, in response to her complaints, "no actions were taken against anybody accept [her]."  (*Id.* at ¶ 18.)

At the end of the school year, Plaintiff "received [an] unsatisfactory rating for [the] 2003-2004 school year despite the fact that [her students] achieved passing rates [that were] 15% higher than the school average."  (*Id.* at ¶ 20.)

### 2.    School Year 2004-2005

In fall 2004, Plaintiff was assigned to teach two consecutive math classes on the first and third floors.  (*Id.* at ¶ 21.)  Plaintiff, who was 66 years old at the time, had to walk up two flights of stairs between the classes.  (*Id.* at ¶ 21.)  According to Plaintiff, she was "the only teacher in the department who had been singled out for such difficult teaching conditions."  (*Id.* at ¶ 21.)  Furthermore, Plaintiff alleges that Tang intentionally filled Plaintiff's classes with problematic students "to create more difficult teaching conditions for [Plaintiff]."  (*Id.* at ¶ 26.)  During the course of the year, Tang conducted observations of Plaintiff's classes and "gave [her] eight unsatisfactory evaluations."  (*Id.* at ¶ 7.)

Later in the year, Tang was replaced by a new Assistant Principal for Mathematics, "Mr. Rubenstein" ("Rubenstein").[4]  According to Plaintiff, Rubenstein, "continued the same policy toward [Plaintiff] as . . . Tang practiced:  humiliating her in the presence of students, refusing [to] help, denying all proposals without discussion, [and] treating [Plaintiff] differently

---

[4] According to Plaintiff, Tang was "forced to retire" in March of 2005.  (Compl. at ¶ 29.)

than other teachers." (*Id.* at ¶ 30.)  Based on the unsatisfactory evaluations of Plaintiff by

Rubenstein and Tang, Plaintiff received another unsatisfactory rating for the 2004-2005 school

year.  (*Id.* at ¶ 33.)

### 3.    School Year 2005-2006

Plaintiff alleges that, during the 2005-2006 school year, Rubenstein refused to assist her

with disciplinary issues, ignored her proposals for improving teaching, accused her of dishonesty

and reprimanded her in the presence of students.  (*Id.* at ¶¶ 34-37.)  Compared to other teachers,

Plaintiff was given more low-level classes that were "the most problematic in discipline."  (*Id.* at

¶ 45.)  According to Plaintiff, she was given "an excessive concentration of problematic

students" in her classes, and "these problematic classes were often selected for . . . formal

observations."  (*Id.* at ¶ 38.)  In her evaluations, Plaintiff was faulted for "poor classroom

management" and failure to keep "all students engaged in the lesson," criticisms that, Plaintiff

alleges, "could be applied to any lesson of any teacher, but [were] only applied to [Plaintiff]."

(*Id.* at ¶ 48.)  According to Plaintiff, the school principal "supported and ratified all harassing

and discriminatory actions against [Plaintiff]."  (*Id.* at ¶ 42.)

At the end of the 2005-2006 year, Plaintiff received a third unsatisfactory rating.  (*Id.* at

¶ 42.)

### 4.    School Year 2006-2007

In fall 2006, Plaintiff was assigned five low-level classes, made up of many repeating

students; according to Plaintiff, the other three math teachers "had only one of such classes

each."  (*Id.* at ¶ 50.)  On December 5, 2006, Plaintiff was given a "disciplinary letter" in her file

by Math Assistant Principal Vitolo.[5]  (*Id.* at ¶ 52.)  The disciplinary letter purportedly contained

false allegations about Plaintiff's classroom management, including the allegation that Plaintiff

"allowed students to go through her personal belongings and condoned the creation of an unsafe

environment."  (*Id.* ¶ 52.)

The letter also "mentioned mistakes in her oral English."  (*Id.* at ¶ 52.)  Plaintiff contends

that all of her supervisors had "accused her" of making grammatical errors in her spoken

English, and that "[s]he had at least 4 letters in her file . . . where random mistakes in oral speech

were mentioned as one of the reasons for unsatisfactory evaluations."  (*Id.* at ¶ 87.)  According to

Plaintiff, such mistakes "had no relation to Math content" (*Id.* at ¶ 88), and other teachers were

not faulted when they made similar mistakes (*Id.* at ¶ 86).

On December 20, 2006, Plaintiff was formally charged with incompetence pursuant to

Education Law 3020-a and was reassigned to the Manhattan Regional Operation Center

("ROC"), where she was no longer permitted to teach students.  (*Id.* at ¶ 53.)  Plaintiff was

apparently still assigned to the ROC when she filed the present complaint on May 30, 2007.

**B.    Procedural History**

**1.    State Division of Human Rights**

Plaintiff alleges that, "[i]n the end of her [first] year of service" at MBHS, she "filed

discrimination charges against [the] DOE in the State Division of Human Rights (SDHR) based

on [her] national origin."[6]  (*Id.* at ¶ 92.)  According to Plaintiff, the SDHR issued an order

---

[5] According to Plaintiff, Rubenstein, the previous Math Assistant Principal,"was
dismissed"on March 1, 2006.  (Compl. at ¶ 41.)

[6] According to Plaintiff, both she and the other Russian teacher, Mr. Gilman, filed
complaints with the SDHR at the same time.  Plaintiff appears to allege that the SDHR

stating: "The singular question facing the Division is whether the complainant was the victim of discrimination perpetrated by the respondent precipitating from her national origin. We determine that she was not." (*Id.* at Ex. b(1).) Plaintiff alleges that this conclusion was not supported by "objective evidence" because it was based on the unsatisfactory evaluations by Tang, Rubenstein and other supervisors who discriminated against her. (*Id.* at ¶ 96(12).) According to Plaintiff, the SDHR

> completely believed in [Plaintiff's supervisor's] evaluations and rejected [Plaintiff's] complaints of discrimination on the bas[is] of these incredible evaluations. As there [was] no objective evidence[] of . . . poor performance[] except [the] personal judgments of administrators who harassed and discriminated[,] . . . their evaluations [should] not be used as valid arguments for rejecting [Plaintiff's] discrimination claims.

(*Id.* at ¶ 96(16).)

## 2. <u>Appeal to the Chancellor's Office</u>

According to Plaintiff, she appealed the unsatisfactory ratings that she received for the 2003-2004 and 2004-2005 school years to the DOE Chancellor's Office. She alleges that a hearing took place on March 3, 2006 (*id.* at ¶ 66), and that both appeals were denied (*id.* at ¶ 70). According to Plaintiff, the decision for the 2004-2005 school year relied upon a "false defamatory statement," namely that Plaintiff had "two substantiated incidents of verbal abuse . . . as evidenced by file documents and testimony." (*Id.* at ¶ 70.) Plaintiff contends that she knew nothing about any alleged incidents of verbal abuse and had never been accused of any such incidents. (*Id.* at ¶ 70.) After Plaintiff complained about this, the DOE issued a "correction" of

---

incorrectly found that Mr. Gilman's teaching improved after the first year, while Plaintiff's teaching did not improve. (*See* Compl. at ¶ 96(5)-(8).)

the dismissal letter, which was the same as the original letter, except that the reference to "verbal abuse" had been removed. (*Id.* at ¶ 76; see also Declaration of Ivan A. Mendez, Jr., dated Nov. 2, 2007 ("Mendez Decl.") at Ex. A ("A new letter, dated May 4, 2006, corrected this alleged error and sustained the unsatisfactory ratings as a '[c]onsequence of failure to follow attendance procedures, and poor classroom management skills.'").)

### 3.    CPLR Article 78 Petition

On May 31, 2006, Plaintiff filed a CPLR Article 78 Petition in the Supreme Court of the State of New York, New York County. (*See* Mendez Decl. at Ex. B (Petition, dated May 31, 2006, in *Batyreva v. Department of Education*, No. 107548/06).) The petition requested that the state court reverse the unsatisfactory ratings that Plaintiff received for the 2003-2004 and 2004-2005 school years, and "investigate the origin of [a] false statement . . . about two incidents of verbal abuse." (*Id.*)

On November 3, 2006, the state court dismissed Plaintiff's Article 78 petition. (*See* Mendez Decl. at Ex. A (*Matter of Olga Batyreva v. New York City Dep't of Education*, No. 107548/06 (Sup. Ct. N.Y. County Nov. 3, 2006).) The Court found that Plaintiff had

> failed to demonstrate that her supervisors acted in an arbitrary and capricious manner or that the Chancellor's Committee lacked a rational basis to sustain her two unsatisfactory reviews. The reviews were based, *inter alia*, on an observation of petitioner's classroom teaching performance on multiple occasions for which she notably received criticism from more than one of her supervisors. Moreover, the record shows that the Chancellor's Committee reviewed all of the documentation concerning [Plaintiff's] evaluations and found ample support for sustaining the unsatisfactory ratings.

(*Id.* at 2.) In addition, after noting at the outset that Plaintiff had "allege[d] that since the start of her assignment at [MBHS], she has been subject to harassment and discrimination . . . based on

8

her Russian ancestry" (*id.* at 1), the court concluded that it had "reviewed [Plaintiff's] claims of discrimination, retaliation and defamation and [had] found them to be unsupported by the record" (*id.* at 2).

### 4.    Plaintiff's Federal Lawsuit

Plaintiff filed the present complaint on May 30, 2007.[7] (*See* Compl.)  According to the complaint, this action is brought for discrimination in employment pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17.  (*Id.* at p. 1.)  Plaintiff claims that Defendant discriminated against her based on her national origin (Russian) commencing on September 2, 2003.  (*Id.* at p. 3.)

In addition, Plaintiff claims that Defendant "engaged in an act of retaliation against [Plaintiff] in response [to Plaintiff's] charges of discrimination in [the] SDHR and complaints about violations in grading Regents Exams."  (*Id.* at ¶ 97(1).)  According to Plaintiff, her damages include deprivation of the "right to work in her chosen profession," loss of "past and future income, damage [to] her business reputation," and "emotional injury."  (*Id.*)

### 5.    The Motions Before the Court

#### a.    Defendant's Motion to Dismiss

Defendant moved to dismiss the complaint on January 17, 2008.  (*See* Notice of Motion to Dismiss, dated Nov. 2, 2007 (Dkt. 7).)  Defendant argues that the complaint is barred by the doctrine of collateral estoppel.  (*See* Defendant's Memorandum of Law in Support of its Motion to Dismiss, dated Nov. 2, 2007 ("Def. Mem.") (Dkt. 8) at 9.)  According to Defendant, Plaintiff's

---

[7] Prior to filing the present complaint, Plaintiff allegedly filed a complaint with the Equal Employment Opportunity Commission on January 4, 2007.  (Compl. at p. 4.)  The EEOC allegedly issued Plaintiff a "right to sue letter" on March 7, 2007.  (*Id.* at p. 5.)

11 unsatisfactory classroom observations and her first two unsatisfactory year-end ratings were previously reviewed by the New York State Supreme Court in the Article 78 Special Proceeding. (Def. Mem. at 9.)  Defendant notes that the Court dismissed Plaintiff's Article 78 petition, holding that it had "reviewed [Plaintiff's] claims of discrimination, retaliation and defamation and ha[d] found them to be unsupported by the record."  (Def. Mem. at 10.)  Therefore, Defendant urges, Plaintiff is collaterally estopped from now arguing that the unsatisfactory classroom observations and ratings that she received prior to the date of her Article 78 petition were discriminatory or retaliatory.

In addition, Defendant argues that Plaintiff's claims of discrimination and retaliation fail to state a claim.  (Def. Mem. at 12.)  In fact, Defendant contends that Plaintiff has failed to allege a *prima facie* case of employment discrimination or retaliation.  (*Id.*)  According to Defendant, "[P]laintiff will not be able to establish that she suffered an adverse employment action – that is, a 'materially adverse change in the terms and conditions of employment'" – because "the [unsatisfactory]-ratings, disciplinary letters and classroom observations . . . and her transfer to the [ROC], are not materially adverse."  (Def. Mem. at 13.)  Further, Defendant argues that, even if she could establish this, Plaintiff "will be unable to show pretext, that is, that defendant's legitimate reasons for removing her from MBHS and charging her with professional incompetence . . . are false, and that the true reasons are national origin and discrimination."  (Def. Mem. at 15.)  Finally, with respect to Plaintiff's claims of retaliation, Defendant argues that Plaintiff will not be able to show that the alleged retaliatory action was caused by the protected activity.  (Def. Mem. at 16.)  In particular, Defendant contends that "there was no close

10

temporal proximity" between Plaintiff's complaint of discrimination to the SDHR and Plaintiff's

removal from MBHS.  (Def. Mem. at 18.)

> **b.**  **Plaintiff's Opposition to the Motion to Dismiss**
> **and Cross-Motion to Amend the Complaint**

Plaintiff submitted three documents in response to Defendant's motion to dismiss:  a 31-

page memorandum of law (*see* Memorandum of Law in Opposition to Defendant's Motion to

Dismiss and in Support of the Cross-Motion to Amend the Complaint, dated Dec. 17, 2007 ("Pl.

Mem.") (Dkt. 12)), a 43-page affidavit (*see* Affidavit in Opposition to Defendant's Motion to

Dismiss and in Support of the Cross-Motion to Amend the Complaint, dated Dec. 17, 2007 ("Pl.

Aff.") (Dkt. 13)) and a separate nine-page amendment to the affidavit (see Amendment to

Affidavit in Opposition to Motion to Dismiss, dated Jan. 14, 2008 ("Pl. Am. Aff.") (Dkt. 16)).  In

response to Defendant's collateral estoppel defense, Plaintiff argues that [t]he identical issue at

bar has not been previously raised."  (Pl. Mem. at 10.)  According to Plaintiff,

> though the same facts were presented in Supreme and Federal
> courts . . . , both cases did not coincide and [the] relief requested
> was entirely different.  In [the] [A]rticle 78 Proceeding I asked the
> Court to change my 2 [unsatisfactory ratings] into satisfactory and
> to investigate the origin of words 'verbal abuse'. . . . The main
> issues of [the federal] case were discriminatory actions which . . .
> violated Civil Rights for equal employment condition [*sic*].

(Pl. Mem. at 14-15.)  Plaintiff further argues:  "As for discrimination, retaliation and defamation

claims, . . .  I did not ask [the] Supreme Court to make any decisions on these issues."  (*Id.*

at 17.)

Also in response to the collateral estoppel defense, Plaintiff argues that the issues

litigated in the Article 78 proceeding were not identical to the issues raised here because her

current lawsuit actually claims that she was discriminated against on the basis of "3 protected

classes:  age, national-origin and [as] a whistle-blower," whereas the state court decision

allegedly only addressed national origin discrimination.  (Pl. Am. Aff. at ¶ 2.)  Plaintiff further

argues that the state court decision is not preclusive because it is currently on appeal.  (Pl. Aff. at

¶ 147.)  Lastly, Plaintiff argues that, even if the state court decision is preclusive, Defendant's

discriminatory acts continued after the state court determination because, on December 20, 2006,

"[she] was brought up on charges under New York Education Law 3020-a, which seeks [her]

dismissal and revocation of [her] teaching license."  (Aff. ¶ 140.)

Regarding Defendant's argument that Plaintiff has failed to allege a *prima facie* case of

either discrimination or retaliation, Plaintiff argues that, if the Court accepts her version of the

facts as true, she must be found to have successfully stated claims of both discrimination and

retaliation as a matter of law.  (Pl. Mem. at 18, 26; Pl. Aff. at ¶¶ 4, 114-15.)  Plaintiff specifically

argues that being placed in a ROC is a "materially adverse change in the terms and conditions of

employment" (Aff. at ¶ 168), and, in response to Defendant's argument that there was no close

temporal proximity between her complaint and this adverse action, she states that "firing [a]

tenured teacher is a rather long and difficult procedure."  (Aff. ¶ 178.)

Finally, in a one-page notice of motion submitted concurrently with her affidavit in

opposition to Defendant's motion to dismiss, Plaintiff appears to seek leave to amend the

complaint.  (Notice of Motion, dated Dec. 26, 2007 (attached to Pl. Aff.).)  Plaintiff, however,

does not address the cross-motion in her memorandum of law, and she has not provided a

proposed amended complaint.

c.    **Defendant's Reply**

In reply, Defendant argues that the Court should disregard and reject Plaintiff's submissions because they "grossly exceed" the Court's page limits.  (Reply at 2.)  In addition, Defendant reiterates that the doctrine of collateral estoppel is applicable here (Reply at 5); that Plaintiff cannot prove discrimination (Reply at 6); and that Plaintiff's retaliation claim must be dismissed because the allegedly protected speech, *i.e.*, Plaintiff's complaints about the Regents Exam, "do[es] not concern an unlawful employment practice" as required by Title VII (Reply at 10).

Finally, Defendant argues that "Plaintiff's cross-motion to amend is fatally flawed and must be [denied]" because Plaintiff has not attached a proposed amended complaint or indicated what allegations she wishes to add to her complaint.  (Reply at 11.)  Plaintiff has not filed a reply on her cross-motion.

## DISCUSSION

## I.    DEFENDANT'S MOTION TO DISMISS

### A.    Legal Standards

#### 1.    Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6) the Court "accept[s] as true all factual statements alleged in the complaint and draw[s] all reasonable inferences in favor of the non-moving party."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (citation omitted); *accord Jaghory v. New York State Dep't of Ed.*, 131 F.3d 326, 329 (2d Cir. 1997).  The court's function on a motion to dismiss is "not to weigh the evidence that

might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Kopec v. Coughlin*, 922 F.2d 152, 155 (2d Cir. 1991) (citation omitted). At the same time, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Achtman v. Kirby, McInerney & Squire*, LLP, 464 F.3d 328, 337 (2d Cir. 2006) (citation omitted). Rather, in order to withstand a motion to dismiss, a complaint must plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007); *see also Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) ("a complaint must allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion."); *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (a pleader is obliged "to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible.").

Nonetheless, "[i]t is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (collecting authority); *see also Hughes v. Rowe*, 449 U.S. 5, 10 (1980) (a *pro se* party's pleadings must be liberally construed in his favor and are held to a less stringent standard than the pleadings drafted by lawyers). Notably, "even after [the Supreme Court's decision in] *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." *Boykin v. Keycorp*, 521 F.3d 202, 216 (2d Cir. 2008).

14

2.    **Collateral Estoppel**

"The 'fundamental notion' of the doctrine of collateral estoppel, or issue preclusion, 'is that an issue of law or fact actually litigated and decided by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit between the same parties or their privies.'" *Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008) (quoting *United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 718-19 (2d Cir. 1993)).  Collateral estoppel applies when: "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was 'actually litigated and actually decided,' (3) there was 'a full and fair opportunity for litigation in the prior proceeding,' and (4) the issues previously litigated were 'necessary to support a valid and final judgment on the merits.'"  *Ali*, 529 F.3d at 489 (quoting *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986)).

"The burden of showing that the issues are identical and necessarily were decided in the prior action rests with the party seeking to apply issue preclusion[,] while the burden of showing that the prior action did not afford a full and fair opportunity to litigate the issues rests with the party opposing its application."  *Yan Yam Koo v. New York City Dep't of Bldgs.*, No. 04 Civ. 9628 (RMB) (DFE), 2006 U.S. Dist. LEXIS 18966, at *11 (S.D.N.Y. Apr. 11, 2006) (citing *Latino Officers Ass'n. v. The City of N.Y.*, 253 F. Supp. 2d 771, 783 (S.D.N.Y. 2003)).

B.    **Plaintiff's Claims**

In this case, the doctrine of collateral estoppel would bar Plaintiff from re-litigating any claims of discrimination or retaliation that were decided in her Article 78 proceeding, assuming that those claims arose from events that occurred prior to the date that Plaintiff filed her Article 78 petition – May 31, 2006.  On the other hand, collateral estoppel would not bar

Plaintiff from proceeding with claims of discrimination and retaliation based on events that occurred after the date she filed her Article 78 petition – assuming that such claims were otherwise legally sufficient.

### 1.    Claims of Discrimination and Retaliation Before May 2006

Although Plaintiff correctly points out that the *relief* she requested in her Article 78 petition is different from the *relief* she requests in her federal lawsuit, the discrimination and retaliation issues raised and decided in the Article 78 proceeding were identical to issues raised in the present case.  For example, in the Article 78 petition, Plaintiff described the same incidents that are described in the present complaint, up to the date when the petition was filed. (*See* Mendez Decl. Ex. B at Attachment pp. 1-8.)  Specifically, Plaintiff stated:  "I was continuously harassed by my supervisors and my Principal since the first day I came to MBHS . . . .  Almost the same [thing] happened with . . . another Russian math teacher, who came to [the] school at the same time."  (Attachment at p. 4.)  Regarding the notation in her file of "verbal abuse," Plaintiff stated in the petition:  "I believe it was not a random mistake but . . . part of harassment, discrimination and conscious efforts to fire me . . . .   It was also retaliation for my complaint to the Division of Human Rights."  (Petition at ¶ 3.)  Thus, the state court characterized Plaintiff's petition as alleging "that since the start of her assignment at [MBHS], she has been subject to harassment and discrimination . . . based on her Russian ancestry." (Mendez Decl. Ex. A, at 1.)  The court "reviewed [Plaintiff's] claims of discrimination, retaliation and defamation" and "found them to be unsupported by the record."  (Mendez Decl. Ex. A, at 2.)

16

This determination was necessary to the state court's dismissal of Plaintiff's petition. In order for the court to conclude that there was a rational basis for the unsatisfactory ratings, it had to reject Plaintiff's claim that the ratings were discriminatory and retaliatory. Significantly, this decision has already been accorded preclusive effect by another state court in a collateral proceeding filed by Plaintiff. *See Batyreva v. New York City Dept. of Educ.*, 2008 NY Slip Op. 50928U, at 1 (Sup. Ct. N.Y. County 2008) ("To the extent that plaintiff contends in this action that her unsatisfactory ratings or the underlying bases for those ratings were discriminatory, retaliatory, defamatory or arbitrary and capricious, those claims are barred by both the doctrine of collateral estoppel and res judicata."). Furthermore, Plaintiff's argument that the state court decision is not preclusive because it is currently on appeal (Pl. Aff. ¶147) is moot because Petitioner's appeal has now been considered and rejected by the Appellate Division. *See Batyreva v. New York City Dept. of Educ.*, 50 A.D.3d 283, 854 N.Y.S.2d 390, 391 (1st Dep't 2008).[8]

In sum, the doctrine of collateral estoppel applies in this case to preclude Plaintiff from re-litigating the issues decided in the Article 78 proceeding. *See, e.g., DiLauria v. Town of Harrison,* 64 Fed. Appx. 267, 270 (2d Cir. 2003) ("Plaintiff's . . . claims are precluded under the doctrine of collateral estoppel because his complaint in the instant action seeks to relitigate issues that were fully and fairly decided during plaintiff's Article 78 proceeding in state court."); *Latino Officers Ass'n,* 253 F. Supp. 2d at 787 ("As the Article 78 judgment . . . necessarily rests

---

[8] To the extent Plaintiff argues in her amended affidavit that the state court decision is not preclusive because it does not address her purported claim of "age" discrimination (*see* Pl. Am. Aff. at ¶ 2), this argument must also be rejected because, even liberally construed, Plaintiff's form complaint in this action, read together with the lengthy attachment reciting her factual allegations, nowhere alleges such a claim.

on findings that Castro was a victim neither of discrimination nor retaliation and that there was a rational basis for the finding that the charges against him were true, Castro is barred from relitigating the wrongful termination claims."); *Richardson v. City of N.Y.*, No. 97 Civ. 7676, 2004 U.S. Dist. LEXIS 2562, at *3-4 (S.D.N.Y. Feb. 20, 2004) ("Where an Article 78 petition seeks annulment of a employment disciplinary decision on the ground that it was discriminatory or retaliatory, a determination by the state courts that the decision was supported by substantial evidence . . . forecloses a similar contention in a subsequent federal action.").

Therefore, I recommend that Plaintiff be precluded from proceeding with any claims in this action that Defendant discriminated or retaliated against her based on her national origin from the date that she transferred to MBHS (September 2003) until the date that she filed the Article 78 petition (May 31, 2006). Consistent with this recommendation, Defendant's motion to dismiss should be granted as to Plaintiff's claims of discrimination and retaliation occurring before May 31, 2006.

### 2.    Claims of Discrimination and Retaliation After May 2006

Plaintiff argues that, even if the state court decision is preclusive, she should be allowed to bring a claim for discrimination and retaliation that allegedly occurred after she filed the Article 78 petition. (*See* Pl. Aff. at ¶ 140.) As discussed below, this Court agrees with Plaintiff in part, and disagrees in part.

### a.    Discrimination Claims

Title VII of the Civil Rights Act of 1964 forbids employment discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).[9] To establish a *prima*

---

[9] Specifically, Title VII provides that: "It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to

*facie* case of employment discrimination, a Plaintiff must show that: (1) she belonged to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. *See Sanders v. N.Y. City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (citing *Terry v. Ashcroft*, 336 F.3d 128, 138, 141 (2d Cir. 2003)).

However, "an employment discrimination plaintiff need not plead a *prima facie* case of discrimination" in order to survive a motion to dismiss. *Swierkiewicz v. Sorema*, N.A., 534 U.S. 506, 515 (2002) (noting that "the Federal Rules do not contain a heightened pleading standard for employment discrimination suits"). Rather, such a plaintiff "need only satisfy Rule 8(a)'s standard of a 'short and plain statement of the claim showing that [she] is entitled to relief.'" *Boykin v. Keycorp*, 521 F.3d 202, 213 (2d Cir. 2008) (citing Fed. R. Civ. P. 8(a)(2)). This means that the complaint need only "give respondent fair notice of what petitioner's claims are and the grounds upon which they rest." *Swierkiewicz*, 534 U.S. at 514 (complaint that detailed events leading up to Plaintiff's termination with relevant dates and nationalities "easily satisfied the requirements of Rule 8(a)" as to claim of discrimination based on national origin); *see also Twombly*, 127 S. Ct. at 1974 (2007) ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."); *Boykin*, 521 F.3d at

---

discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 USCS § 2000e-2(a).

216 ("even after *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases.").

In this case, Plaintiff has sufficiently alleged that Defendant discriminated against her after May 31, 2006 in violation of Title VII. Plaintiff alleges that, during fall 2006, she was assigned more difficult classes than other non-Russian teachers, falsely accused of poor classroom management, and criticized for mistakes in her oral English that were unrelated to her ability to teach math, all because of her Russian national origin. (Compl. at ¶¶ 45-52.) Plaintiff further alleges that, on December 30, 2006, she was formally charged with incompetence and reassigned to the ROC, where she was no longer permitted to teach students. (Compl. at ¶ 52.)

Despite Defendant's arguments to the contrary, Plaintiff is not required at this stage to establish that the DOE's stated reasons are a pretext for discrimination, *see Swierkiewicz*, 534 U.S. at 510 (requirement that Plaintiff show pretext "is an evidentiary standard, not a pleading requirement"), and Plaintiff has adequately pleaded that she suffered an adverse employment action, *see Patane v. Clark*, 508 F.3d 106, 116 (2d Cir. 2007) ("[W]e have specifically recognized 'significantly diminished material responsibilities' as the sort of employment action 'sufficiently disadvantageous to constitute an adverse employment action' in a Title VII case." (citing *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004)).

Thus, the allegations in the complaint regarding Defendant's post-May-2006 conduct are sufficient to state a plausible claim of discrimination under Title VII. *See, e.g., Leibowitz v. Cornell Univ.*, 445 F.3d 586, 591 (2d Cir. 2006) (applying Rule 8 analysis and concluding that discrimination complaint was sufficient to withstand motion to dismiss). Accordingly,

I recommend that Defendant's motion to dismiss the complaint be denied as to Plaintiff's claim that Defendant discriminated against her on the basis of national origin after May 31, 2006.

### b. Retaliation Claims

Title VII prohibits an employer from retaliating against an employee who complains about discrimination. *See Burlington Northern & Santa Fe Ry. v. White*, 126 S. Ct. 2405, 2412 (2006) ("The anti[-]retaliation provision seeks to . . . prevent[] an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of [TitleVII's] basic guarantees."). "Broadly speaking, the anti-retaliation provision protects employees from particular acts of discrimination that are retaliatory." *Richardson v. Comm'n on Human Rights & Opportunities,* No. 06-0474-cv, 2008 U.S. App. LEXIS 15206, at *16 (2d Cir. July 7, 2008). More specifically, Section 704 of "Title VII prohibits an employer from 'discriminating against any of its employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'" *McMenemy v. City of Rochester*, 241 F.3d 279, 282 (2d Cir. 2001) (alterations in original) (citing 42 U.S.C. § 2000e-3(a)).

"To state a claim for retaliation in violation of Title VII, a plaintiff must plead facts that would tend to show that:  (1) she participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging her; and (3) there exists a causal connection between the protected activity and the adverse action." *Patane*, 508 F.3d at 115 (citing *Feingold v. New York*, 366 F.3d 138, 156 (2d Cir. 2004)).

i.    **Alleged Retaliation for Plaintiff's Complaint
About the Grading of the Regents Exam**

It appears that Plaintiff's primary claim of retaliation is that Defendant retaliated against her because she complained about the way in which teachers at MBHS graded the Regents Exam. As discussed above, Plaintiff alleges that, in the spring of 2004, she made complaints to the principal at MBHS and to several outside agencies regarding her belief that teachers at her school were improperly grading the Regents Exam with number-two pencils instead of red pencil or pen, thereby "creat[ing] the opportunity for cheating." (Compl. at ¶¶ 15-18.) According to Plaintiff, "before January 2004 discriminatory actions were based on national origin. After this date [an] additional motive (retaliation for complaints about violations in scoring Regents) was added." (Compl. at ¶ 96(15).)

This allegation fails to state a legally sufficient claim of retaliation because Plaintiff does not allege that her complaints were about a "protected activity" under Title VII. *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) ("The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." (citation omitted)). The subject of Plaintiff's complaints – the improper scoring of the Regents Exam by other teachers – did not concern an act of discrimination. Hence, "[s]uch communication, because it does not concern an unlawful employment practice, is not protected activity and cannot give rise to an unlawful retaliation claim." *Malaney v. El Al Isr. Airlines*, No. 07 Civ. 8773 (DLC), 2008 U.S. Dist. LEXIS 1709, at *17 (S.D.N.Y. Jan. 4, 2008) (citing *McMenemy v. City of Rochester*, 241 F.3d 279, 285 (2d Cir. 2001); *see also Wimmer v. Suffolk County Police Dep't*, 176 F.3d 125, 134-35 (2d Cir. 1999) (affirming summary judgment dismissal where Plaintiff failed to establish that he was engaged in a protected activity under the statute).

Accordingly, I recommend that Defendant's motion to dismiss be granted as to Plaintiff's claim that Defendant retaliated against her for complaining about the grading of the Regents Exam.

### ii.    Alleged Retaliation for Plaintiff's Complaints About Discrimination

Under a liberal construction of the complaint, Plaintiff also alleges that Defendant retaliated against her for complaining to the State Division of Human Rights about Defendant's purportedly discriminatory conduct, and for making other complaints of discrimination. For example, as described above, Plaintiff alleges that "[i]n the end of her [first] year of service" at MBHS, she "filed discrimination charges against [the] DOE in the State Division of Human Rights." (Compl. at ¶ 92.) Plaintiff further claims that subsequently, Defendant "engaged in an act of retaliation against [her] in response [to] [her] charges of discrimination in [the] SDHR . . . . Acts of retaliation included harassment, false performance reviews and [a] manufactured letter of remand, [and] exile[] to the [ROC]." (Compl. ¶ 97(1).)

The allegations in the complaint are sufficient to state a plausible claim that Defendant took retaliatory action against Plaintiff after May 31, 2006. While the Article 78 decision precludes Plaintiff from claiming that she was retaliated against before May 31, 2006, it does not preclude her from claiming that alleged discrimination after that date was retaliatory.

Defendant argues that Plaintiff has not pleaded a sufficient causal connection between the protected activity and the retaliatory act. (Def. Mem. at 16.) In particular, Defendant contends that "there was no close temporal proximity" between Plaintiff's complaint of discrimination to the SDHR and Plaintiff's transfer to the ROC (Def. Mem. at 18), and that therefore Plaintiff will be unable to establish a causal connection. *See, e.g., Gorman-Bakos v. Cornell Coop. Extension,*

23

252 F.3d 545, 554 (2d Cir. 2001) (noting that "a [causal] connection can . . . be established indirectly by 'showing that the protected activity was closely followed in time by the adverse [employment] action.'").)

Yet, although more than two years passed between Plaintiff's complaint to the SDHR and the alleged discrimination during fall 2006, Plaintiff has plausibly alleged that the events are causally connected, to the extent that she is required to plead such a connection at this stage of the case. While standing alone, the "temporal proximity" between the events might be insufficient to permit an inference of causal connection, *see, e.g., Altieri v. Albany Pub. Library*, 172 Fed. Appx. 331, 333-34 (2d Cir. 2006) ("[W]here the complaint shows that the first alleged act of retaliation occurred twenty-one months after plaintiff's protected activity, and where nothing in plaintiff's pleadings, even liberally construed, suggest a plausible scenario of a causal connection between two events occurring so far apart, plaintiff's retaliation complaint must be dismissed."),[10] Plaintiff also alleges that the time lapse was due to the complexity of the various procedural requirements that Defendant had to comply with in order to terminate her, (*see* Aff. ¶ 178 (alleging that "firing [a] tenured teacher is a rather long and difficult procedure.").

In addition, construing the complaint liberally, as the Court must, *see Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) ("A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (internal quotation marks and citations omitted)), Plaintiff alleges

_____

[10] *But see Boyer v. Syosset Cent. Sch. Dist.*, No 07-CV-3520 (JFB) (ETB), 2008 U.S. Dist. LEXIS 30184, at *14-15 (E.D.N.Y. Apr. 14, 2008) (on motion to dismiss, rejecting claim that Plaintiff cannot prove a causal connection between the protected activity and the adverse employment action because "[n]o such heightened pleading requirement for discrimination claims exists in Title VII").

that the protected activity in which she engaged was not limited to a single complaint to the SDHR, but also included other complaints alleging discrimination, such as her appeal to the DOE Chancellor's Office and Article 78 petition to the New York State Supreme Court. These complaints were filed within four to six months of the commencement of the alleged retaliation, which is significantly closer in temporal proximity.

Accordingly, at the motion-to-dismiss stage, Plaintiff has sufficiently alleged a plausible claim of retaliation for the period after May 31, 2006. *See Boykin*, 521 F.3d at 216 (noting that "dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases. The merits of a claim . . . which on its face presents a plausible allegation of disparate treatment, should be tested on summary judgment."); *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) ("[T]he pleading requirements in discrimination cases are very lenient, even *de minimus*."). Therefore, I recommend that Defendant's motion to dismiss be denied as to Plaintiff's claim that Defendant retaliated against her after May 31, 2006 for filing complaints of discrimination.

## II.    PLAINTIFF'S CROSS-MOTION TO AMEND THE COMPLAINT

In addition to opposing Defendant's motion to dismiss, Plaintiff cross-moves to amend the complaint. (Dkt. 13.) Defendant argues that the cross-motion should be denied because Plaintiff has not provided a proposed amended complaint or otherwise provided notice of her proposed amendments. (*See* Reply at 11.)

Under Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend his or her "pleading once as a matter of course . . . before being served with a responsive pleading." Fed. R. Civ. P. 15(a)(1)(A). "It is settled law that a motion to dismiss for failure to state a claim

25

is not a responsive pleading within the meaning of Rule 15(a)." *Mahmud v. Kaufmann*, 454 F. Supp. 2d 150, 156 (S.D.N.Y. 2006) (citation omitted); *see also Barbara v. New York Stock Exch., Inc.*, 99 F.3d 49, 56 (2d Cir. 1996) ("a motion to dismiss is not a responsive pleading within the meaning of Rule 15(a)" (citation omitted)); *Denuzzo v. Yale New Haven Hosp.*, 465 F. Supp. 2d 148, 156 (D. Conn. 2006) ("The Second Circuit has consistently held that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is not a 'responsive pleading' under Fed. R. Civ. P. 15(a).").

In this case, no previous amended complaint has been filed by Plaintiff and no responsive pleading has been filed by Defendant. Therefore, Plaintiff should be permitted to amend the complaint as a matter of course pursuant to Rule 15(a). *See, e.g., Krasner v. Episcopal Diocese of Long Island*, 328 F. Supp. 2d 367, 371 (E.D.N.Y. 2004) (because a motion to dismiss is not a responsive pleading, "plaintiff's cross-motion for permission to amend the complaint is unnecessary"). Accordingly, I recommend that Plaintiff be directed that she may file an amended complaint within 30 days of the Court's order acting on this Report and Recommendation. I further recommend that the Court instruct Plaintiff that, if she chooses to file an amended complaint, the amended complaint must comply with Rule 8 of the Federal Rules of Civil Procedure. Rule 8 requires that the complaint comprise "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); see also *Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004) ("the basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike." (citation omitted)).[11]

---

[11] As noted above, Plaintiff's current complaint, including Plaintiff's attachment setting out her factual allegations, is over 33-pages long. In many places, it contains allegations that appear irrelevant, or that are repetitive and confusing. If Plaintiff needs assistance understanding the requirements of Rule 8 or any other rule governing proceedings in this Court, she should

If the Court adopts this Report and Recommendation, then any amended complaint should focus on alleged acts of retaliation and discrimination committed by Defendant after May 31, 2006.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Defendant's motion to dismiss be granted in part and denied in part. Specifically, I recommend that the motion be granted to the extent it seeks dismissal of: (1) Plaintiff's Title VII claims of discrimination and retaliation occurring before May 31, 2006, and (2) Plaintiff's claim that she was retaliated against after May 31, 2006 for complaining about the grading of the Regents Exam. I recommend that the motion be denied to the extent it seeks dismissal of Plaintiff's other Title VII claims of discrimination and retaliation occurring after May 31, 2006.

In addition, as to Plaintiff's cross-motion to amend the complaint, I recommend that Plaintiff be permitted to amend the complaint within 30 days of the date of the Court's order acting on this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Crotty, United States Courthouse, 500 Pearl Street, Room 735, New York, NY 10007,

---

contact the Court's *Pro Se* Office. In addition, as Defendant has pointed out in its Reply, Plaintiff's various submissions in response to the motion to dismiss exceed the Court's page limit requirements for memoranda of law. Although I do not recommend that Plaintiff's current submissions be rejected on this basis, Plaintiff should consult and comply with the Court's individual practices in the future, including the Court's page-limit requirements and the requirement that memoranda of 10 pages or more contain a table of contents.

and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 525,

New York, NY 10007. Any requests for an extension of time for filing objections must be

directed to Judge Crotty. FAILURE TO OBJECT WITHIN TEN (10) DAYS WILL RESULT

IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See*

*Thomas v. Arn,* 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d

1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v.*

*Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d

Cir. 1983).

Dated:  New York, New York
        August 12, 2008

                                        Respectfully Submitted,


                                        DEBRA FREEMAN
                                        United States Magistrate Judge


<u>Copies to:</u>

Hon. Paul A. Crotty, U.S.D.J.

Ms. Olga Batyreva
Plaintiff *pro se*
2007 Surf Avenue #15D
Brooklyn, NY 11224

Ivan A. Mendez, Esq.
Assistant Corporation Counsel
New York City Law Department
100 Church Street
New York, NY 10007